UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>KINGSLEY T. EZE )<br>)<br>)<br>Defendant. )<br>)<br>) | 08 CR 10321 DPW<br>CRIMINAL NO.<br><br>VIOLATIONS:<br><br>18 U.S.C. §1001(a)(2) (Making a False Statement)<br>18 U.S.C. §1347 (Health Care Fraud)<br>18 U.S.C. §1028A (Aggravated Identity Theft)<br>18 U.S.C. §2 (Aiding & Abetting) |

## INDICTMENT

THE GRAND JURY CHARGES THAT:

### PRELIMINARY ALLEGATIONS

At all times material hereto, unless otherwise alleged:

#### The Defendant

1. The defendant **KINGSLEY TOCHUKWU EZE ("EZE")** was a resident of Braintree, Massachusetts, and had a principal place of business in Quincy, Massachusetts.

#### Background

2. Kings Enterprize obtained a business certificate from the City of Quincy, Massachusetts on or about August 4, 2006 to conduct business at the address of 1354 Hancock Street, Suite 207, Quincy, Massachusetts. At all relevant times, **EZE** held himself out as the sole owner of Kings Enterprize.

3. Kings Enterprize purported to sell medical supplies, including durable medical equipment ("DME"). DME is equipment (1) that can withstand repeated use, (2) is primarily and

customarily used to serve a medical purpose, (3) generally is not useful to a person in the absence of an illness or injury, and (4) is appropriate for use in the home.

4. At various relevant times, including in or about 2006 and 2007, **EZE** opened and controlled a bank account in his own name and the name of Kings Enterprize.

5. Beginning in or about December 2006 and continuing through August 2007, Kings Enterprize submitted claims to Medicare for a total of approximately $3.36 million for DME that purportedly was prescribed for and provided to Medicare beneficiaries. During this time period, Medicare reimbursed Kings Enterprize approximately $1.4 million for such DME.

## The Medicare Program

6. The Medicare program ("Medicare") was a federally subsidized health insurance program for the elderly and for persons with certain disabilities pursuant to Title XVIII of the Social Security Act.

7. Medicare was a health care benefit program within the meaning of 18 U.S.C. §24, in that it was a public plan affecting commerce, under which medical benefits, items, and services were provided to individuals, and included individuals and entities who were providing medical benefits, items, and services for which payment may be made under the plan.

8. The Department of Health and Human Services ("HHS") was an agency of the United States and was responsible for the funding, administration, and supervision of the Medicare program. The Centers for Medicare and Medicaid Services ("CMS") was a division of HHS and was directly responsible for the administration of the Medicare program. CMS, in discharging those responsibilities, contracted with private insurance companies, known as

"carriers" to receive, review, and pay appropriate claims for reimbursement for the provision of DME to Medicare program beneficiaries.

9. In order to become a Durable Medical Equipment, Prosthetics, Orthotics, and Supplies ("DMEPOS" or "DME") Supplier authorized to bill Medicare, a company was required to submit a Medicare Enrollment Application to CMS via the National Supplier Clearinghouse ("NSC"), Palmetto GBA. The NSC was contracted by Medicare to receive, evaluate, and approve or deny Medicare Enrollment Applications. Only after the NSC approved the application and provided the company with a Medicare supplier number could the company bill Medicare for benefits, items, and services provided to Medicare beneficiaries.

10. In order for a supplier to receive reimbursement from Medicare for DME, the supplier must have a written order (prescription) from a physician, physician assistant, or nurse practitioner for the DME. A DME supplier was required to have the order before submitting any claims to Medicare for DME provided to a beneficiary, and was required to keep such orders on file for seven years. During the relevant time period, a supplier also must have received and maintained a signed Certificate of Medical Necessity ("CMN") from a physician, physician assistant, or nurse practitioner if the supplier provided and billed Medicare for one particular type of DME equipment, a lymphedema pump.

11. **EZE** submitted a Medicare Enrollment Application to the NSC on behalf of Kings Enterprize on August 30, 2006. **EZE** subsequently submitted additional information for the application to the NSC, including on September 18, 2006. On both dates, **EZE** signed a certification as the "Authorized Official" of Kings Enterprize certifying, among other things, that the information in the application was true, correct, and complete.

3

### The Scheme to Defraud

12. From in or about August 2006 through in or about August 2007, **EZE** devised and intended to devise a scheme and artifice to defraud the Medicare program and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, well knowing that the pretenses, representations, and promises were false and fraudulent when made.

### The Purpose of the Scheme

13. The purpose of the scheme was to enrich **EZE** and an individual residing in Texas, hereinafter referred to as "Person A," and to defraud the Medicare program of money by causing false and fraudulent claims for DME to be submitted and paid.

### Manner and Means

14. It was a part of the scheme and artifice to defraud that Person A was responsible for several aspects of Kings Enterprize's operations, including, among other things, obtaining Kings Enterprize's purported orders for DME, hiring delivery and billing personnel for the company, providing start-up funding for the company, and obtaining the equipment that Kings Enterprize provided.

15. It was further part of the scheme and artifice to defraud that Person A and **EZE** had an arrangement, whereby Person A received approximately 75% of the gross proceeds earned by Kings Enterprize, and **EZE** received the other 25%.

16. It was further part of the scheme and artifice to defraud that **EZE** did not disclose to the NSC, despite an obligation to do so, that Person A had an ownership, financial, or control interest in Kings Enterprize.

17. It was further part of the scheme and artifice to defraud that **EZE** caused false claims to be submitted to Medicare, in that the DME for which Kings Enterprize sought reimbursement from Medicare had not actually been prescribed by a doctor for the Medicare beneficiary.

18. It was further part of the scheme and artifice to defraud that the purported prescriptions and CMNs for the claims EZE, on behalf of Kings Enterprize, submitted to Medicare were not legitimate and contained forged doctors' signatures and other information.

19. It was further part of the scheme and artifice to defraud that, in many cases, the beneficiaries to whom Kings Enterprize claimed to have provided DME had never been examined by, or heard of, the doctor whose name and forged signature were on the beneficiary's purported prescription for the DME.

20. It was further part of the scheme and artifice to defraud that EZE, on behalf of Kings Enterprize, submitted fraudulent claims to Medicare using doctors' names and Unique Physician Identification Numbers ("UPINs") without the doctors' authorization or knowledge.

21. It was further part of the scheme and artifice to defraud that, in many cases, Kings Enterprize did not provide any DME to the beneficiaries despite submitting claims to and receiving reimbursement from Medicare for DME purportedly prescribed to those beneficiaries.

22. It was further part of the scheme and artifice to defraud that, in many cases, when Kings Enterprize did provide equipment to beneficiaries, the equipment was less valuable than the DME the company claimed to have provided to beneficiaries in its claims to Medicare, and for which it had been reimbursed by Medicare.

23. It was further part of the scheme and artifice to defraud that **EZE** caused Kings Enterprize to submit fraudulent claims to Medicare and, as a result, to receive approximately $1.4 million in Medicare reimbursements to which the company was not entitled, of which Person A received approximately 75% and **EZE** received approximately 25%.

## COUNT ONE
### (18 U.S.C. §1001(a)(2) - Making a False Statement)

24. Paragraphs one through twenty-three of this Indictment are herein realleged and incorporated by reference. The Grand Jury further charges:

25. On or about September 18, 2006, in the District of Massachusetts and elsewhere,

### KINGSLEY T. EZE,

defendant herein, did knowingly and willfully make a materially false statement and representation in a matter within the jurisdiction of the executive branch of the United States -- to wit, defendant **EZE** falsely certified to CMS in the Medicare Enrollment Application that the information contained therein was true, correct, and complete, when in fact **EZE** had failed to disclose, despite being required to do so, that Person A had an ownership, financial, or control interest in Kings Enterprize.

All in violation of Title 18, United States Code, Section 1001(a)(2).

## COUNTS TWO THROUGH FIFTEEN
### (18 U.S.C. §1347 - Health Care Fraud)

26. Paragraphs one through twenty-three of this Indictment are herein realleged and incorporated by reference. The Grand Jury further charges:

27. On or about the dates set forth in the chart below, in the District of Massachusetts and elsewhere,

### KINGSLEY T. EZE,

defendant herein, knowingly and willfully executed a scheme and artifice to defraud Medicare, a health care benefit program, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property under the custody and control of the Medicare program, in connection with the delivery of and payment for the health care benefits, items, and services, each such instance being a separate and additional Count of this Indictment, as set forth below:

| Count | Patient | Fraudulent Items Claimed | Claim Date |
|---|---|---|---|
| 2 | HA | rigid back brace that extends from shoulders to pelvis; knee brace with rigid adjustable supports (LT/RT); custom made ankle brace (LT/RT); wrist/hand brace with thumb control (LT/RT); circulating hot water pad | 2/15/07 |
| 3 | HB | rigid back brace that extends from shoulders to pelvis | 2/26/07 |
| 4 | HB | knee brace with rigid adjustable supports (LT/RT); custom made ankle brace (LT/RT); fracture brace for wrist (LT/RT); heat lamp with stand; shoulder brace; elbow brace (LT/RT) | 2/28/07 |

| 5 | AB | knee brace with rigid adjustable supports (LT/RT); ankle brace (LT/RT); rigid back brace that extends from shoulders to pelvis; wrist/hand brace with thumb control (LT/RT); shoulder brace; elbow brace (LT/RT); heat lamp with stand; knee control cap (LT/RT); lymphedema pump; leg sleeve for lymphedema pump | 2/28/07 |
|---|---|---|---|
| 6 | TB | knee brace with rigid adjustable supports (LT/RT); ankle brace (LT/RT); rigid back brace that extends from shoulders to pelvis; wrist/hand brace with thumb control (LT/RT); shoulder brace; elbow brace (LT/RT); heat lamp with stand; knee control cap (LT/RT); lymphedema pump; leg sleeve for lymphedema pump | 2/28/07 |
| 7 | RB | rigid back brace that extends from shoulders to pelvis; knee brace with rigid adjustable supports (LT/RT); fracture brace for wrist (LT/RT); heat lamp with stand; knee control cap (LT/RT); shoulder brace; elbow brace (LT/RT); lymphedema pump; leg sleeve for lymphedema pump | 4/18/07 |
| 8 | SD | rigid back brace that extends from shoulders to pelvis; knee control cap (LT/RT); fracture brace for wrist (LT/RT); heat lamp with stand; knee brace with rigid adjustable supports (LT/RT); shoulder brace; elbow brace (LT/RT); lymphedema pump; leg sleeve for lymphedema pump | 4/16/07 |
| 9 | SD | safety belt or positioning belt; batteries for motorized wheelchair; motorized wheelchair group 2 | 4/18/07 |
| 10 | EG | rigid back brace that extends from shoulders to pelvis; knee brace with rigid adjustable supports (LT/RT); custom made ankle brace (LT/RT); fracture brace for wrist (LT/RT); shoulder brace; elbow brace (LT/RT); lymphedema pump; leg sleeve for lymphedema pump | 12/28/06 |

| 11 | ML | rigid back brace that extends from shoulders to pelvis; knee brace with rigid adjustable supports (LT/RT); fracture brace for wrist (LT/RT); heat lamp with stand; knee control cap (LT/RT); shoulder brace; elbow brace (LT/RT); lymphedema pump; leg sleeve for lymphedema pump | 5/2/07 |
| --- | --- | --- | --- |
| 12 | BM | rigid back brace that extends from shoulders to pelvis; knee brace with rigid adjustable supports (LT/RT); fracture brace for wrist (LT/RT); heat lamp with stand; knee control cap (LT/RT); shoulder brace; elbow brace (LT/RT); lymphedema pump; leg sleeve for lymphedema pump | 4/25/07 |
| 13 | CR | rigid back brace that extends from shoulders to pelvis; knee brace with rigid adjustable supports (LT/RT); custom made ankle brace (LT/RT); fracture brace for wrist (LT/RT); heat lamp with stand; shoulder brace; elbow brace (LT/RT) | 2/20/07 |
| 14 | CR | lymphedema pump; leg sleeve for lymphedema pump | 3/8/07 |
| 15 | DW | rigid back brace that extends from shoulders to pelvis; knee brace with rigid adjustable supports (LT/RT); fracture brace for wrist (LT/RT); heat lamp with stand; knee control cap (LT/RT); shoulder brace; elbow brace (LT/RT); lymphedema pump; leg sleeve for lymphedema pump | 5/2/07 |

All in violation of Title 18, United States Code, Sections 1347 and 2.

## COUNTS SIXTEEN THROUGH SEVENTEEN
### (18 U.S.C. §1028A - Aggravated Identity Theft)

28. Paragraphs one through twenty-three of this Indictment are herein realleged and incorporated by reference. The Grand Jury further charges:

29. On or about the dates set forth in the chart below, in the District of Massachusetts and elsewhere,

### KINGSLEY T. EZE,

defendant herein, did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, during and in relation to a violation of 18 U.S.C. §1347, Health Care Fraud, as follows:

| Count | Date | Transaction |
|---|---|---|
| 16 | 12/28/06 | **EZE**, using the name and other identifying information, including the UPIN, of TL, caused claims to be submitted to Medicare for DME purportedly prescribed by TL for beneficiary EG, when in fact the DME had not been prescribed by TL. |
| 17 | 4/18/07 | **EZE**, using the name and other identifying information, including the UPIN, of CH, caused claims to be submitted to Medicare for DME purportedly prescribed by CH for beneficiary RB, when in fact the DME had not been prescribed by CH. |

All in violation of Title 18, United States Code, Sections 1028A and 2.

## FORFEITURE ALLEGATIONS
## 18 U.S.C. § 982(a)(7)

The Grand Jury further charges:

1. Upon conviction of one or more of the Federal offenses alleged in Counts One through Fifteen of this Indictment,

**KINGSLEY T. EZE,**

defendant herein, shall forfeit to the United States pursuant to 18 U.S.C. § 982(a)(7), all property, real and personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense. Such property includes, without limitation, the following:

   (a) a sum of money equal to approximately $1.4 million in United States currency, representing the amount of gross proceeds traceable to the offenses alleged in Counts One through Fifteen of this Indictment.

2. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

   (a) cannot be located upon the exercise of due diligence;

   (b) has been transferred or sold to, or deposited with, a third party;

   (c) has been placed beyond the jurisdiction of the court;

   (d) has been substantially diminished in value; or

   (e) has been commingled with other property that cannot be divided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by 18 U.S.C. § 982(b), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above. Such property includes, without limitation, the following vehicles:

(a) 1998 Jaguar, model XJ8L, color black/brown, VIN SAJHX6244WC836789; and

(b) 2003 Hummer, style Utility, color green, VIN 5GRGN23U13H103653.

All pursuant to Title 18, United States Code, Section 982(a)(7).

A TRUE BILL

_Veronica Suffee_
FOREPERSON OF THE GRAND JURY

_Amanda Strachan_
AMANDA P. M. STRACHAN
JEREMY M. STERNBERG
Assistant United States Attorneys

DISTRICT OF MASSACHUSETTS: October 29, 2008  @ 11:48

Returned into the District Court by the Grand Jurors and filed.

_Mack Olly_
DEPUTY CLERK

12